**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Brandon Marsh (SBN 268316)
bmarsh@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone:    (858) 997-0860
Facsimile:    (858) 369-0096

**THE SCHALL LAW FIRM**
Brian Schall (SBN 290685)
brian@schallfirm.com
1800 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone:    (424) 303-1964

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. MCCUTCHEON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PORTOLA PHARMACEUTICALS INC., SCOTT GARLAND, SHELDON KOENIG, and MARDI C. DIER,<br><br>Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff John R. McCutcheon ("Plaintiff"), alleges upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by Portola Pharmaceuticals, Inc. ("Portola" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference calls and postings on Portola's website concerning the Company's public statements; and (d) review of other publicly available information concerning Portola and the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.      This is a federal securities class action against Portola and certain of its officers for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities that purchased or otherwise acquired Portola common stock from May 8, 2019 through January 9, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiff's claims allege that defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price.

2.      Portola is a biopharmaceutical company that develops and commercializes treatments for thrombosis and other hematologic diseases. Its lead product is Andexxa, marketed as Ondexxya in Europe.  Andexxa is for patients treated with rivaroxaban or apixaban, when anticoagulation needs to be reversed due to life-threatening or uncontrolled bleeding.

3.      During the Class Period, the Company misleadingly touted Andexxa's revenues and future prospects – calling it one of the most successful drug launches in history and hailing the Company's purportedly exceptional execution on the Andexxa launch as the catalyst for

continued robust revenue growth. However, the Company failed to warn investors of significant risks and trends that had already materialized. While Portola emphasized "strong demand for Andexxa," "deepening utilization within existing accounts" at hospitals, and broad usage for the drug in a variety of medical situations, in reality, the opposite was true. As the Company knew but concealed from investors, the "strong demand" for Andexxa simply did not exist. Andexxa's astronomically high wholesale price of up to $49,500 per dose forced many of Portola's clients to perform utilization reviews of Andexxa's cost effectiveness as a treatment to determine whether to continue to utilize Andexxa beyond a few trial months. Consequently, a number of clients had drastically "curtailed use of Andexxa following drug utilization reviews." This caused Andexxa's quarterly sales growth to Tier 1 hospitals, Portola's most important accounts, to collapse to zero or "flat."

4.     On January 9, 2020, Portola announced preliminary net revenues of $28 million for the fourth quarter of 2019 that fell short by a wide margin of the $41 million consensus expectations. Portola executives were forced to admit that Andexxa demand was falling dramatically due to "typical" hospital utilization reviews and the short shelf life of a version of the product. In addition, the Company disclosed that it was taking a substantial charge of $5 million for unused and returned Andexxa product previously recognized as revenue and incorporated into Portola's revenue growth numbers, largely stemming from selling a version of Andexxa with an ultra-low shelf life of as little as six months.

5.     On this news, the Company's share price plummeted by $9.98, or approximately 40%, to close at $14.76 per share on January 10, 2020. On the same day, Oppenheimer issued a report on Portola that stated it was, "[m]oving to the [s]idelines on Andexxa [h]eadwinds" because the utilization reviews "signal hospital interest in Andexxa likely crossed a critical threshold." The fallout from the disclosure was so bad that Portola had to conduct a second investor call on January

14, 2020, where Defendants disclosed that Andexxa's net revenues were also impacted by "lower distributor purchases to manage inventory" in order "to keep their inventory levels at a constant level in the fourth quarter."

6.      As alleged herein, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the six month shelf life of the short-dated Andexxa was causing the Company to face a significant risk of returns from customers due to expiration before use; (2) Portola was shifting to a longer-dated Andexxa version with a shelf life of up to 36 months to exchange with short-dated versions at no cost to customers but at significant expense to the Company; (3) Portola had not established adequate reserves for returns; (4) because of utilization reviews, financially strapped hospitals and healthcare organizations were curtailing usage of Andexxa in order to make more efficient use of their budgets; (5) certain distributors were cutting back on orders of Andexxa as they were awash with inventory of Andexxa; (6) as a result, Portola was reasonably likely to need to "catch up" on accounting for return reserves; and (7) therefore, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

---

CLASS ACTION COMPLAINT

3

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District, as Portola is headquartered in this district.

11.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## CLASS ACTION ALLEGATIONS

12.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Portola common stock between May 8, 2019 and January 9, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

13.      The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Portola's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of shares of Portola common stock were

traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Portola or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a) whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b) whether Defendants participated in and pursued the common course of conduct complained of herein;

c) whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of Portola;

d) whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Portola;

e) whether the market price of Portola common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f) the extent to which the members of the Class have sustained damages and the proper measure of damages.

17.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**PARTIES**

18.     Plaintiff John R. McCutcheon as set forth in the accompanying certification, incorporated by reference herein, purchased Portola common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Portola is incorporated under the laws of Delaware with its principal executive offices located in South San Francisco, California. Portola's common stock trades on the NASDAQ exchange under the symbol "PTLA."

20.     Defendant Scott Garland ("Garland") was the Chief Executive Officer ("CEO") and President of the Company at all relevant times.

21.     Defendant Mardi C. Dier ("Dier") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

22.     Defendant Sheldon Koenig ("Koenig") was an Executive Vice President and the Chief Commercial Officer of the Company at all relevant times.

23.     Defendants Garland, Koenig and Dier (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein

to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

24.     The Company and the Individual Defendants are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

25.     Portola is a biopharmaceutical company that develops and commercializes treatments for thrombosis and other hematologic diseases.

26.     Portola's lead drug is Andexxa.  Andexxa prevents two kinds of blood thinners, apixaban and rivaroxaban, from inhibiting Factor Xa, thereby restoring a patient's clotting ability.  As an orphan drug developed to treat extremely rare medical conditions, Andexxa is astronomically expensive with wholesale prices of between $25,000 - $50,000 per dose.  Andexxa comprises nearly 100% of the Company's revenues and is vital to the Company's financial performance and future business prospects.

27.     The FDA approved Andexxa for sale on a limited basis in the U.S. in May 2018, and for full commercial sale in December 2018.  While Andexxa is the only FDA-approved drug of its kind, older and much cheaper alternative treatments exist to treat severe bleeds in patients taking anti-coagulants.  Moreover, there are other blood thinners besides apixaban and rivaroxaban.

28.     Faced with such a high-priced drug, many hospitals that had tried out Andexxa later undertook formal reviews of their usage of Andexxa in order to determine the most cost-effective

treatment for patients with bleeds.  Portola disclosed that these reviews take between 6-12 months to complete.  Thus, many hospitals had yet to establish firm utilization patterns for Andexxa, meaning the ultimate demand for Andexxa was not known because first adopter hospitals were essentially under a trial period.

29.     Portola had initially been selling a "short-dated" version of Andexxa with a shelf-life of between 6-12 months from the time it arrived to the distributor.  Customers that purchased this short-dated Andexxa could return expired product at no cost and exchange for "longer-dated" product with a shelf life of up to 36 months that Portola had begun to sell later in the Class Period.

**Materially False and Misleading**
**Statements Issued During the Class Period**

30.     On May 8, 2019, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2019.  The Company reported total revenues of $22.2 million for the first quarter of 2019, compared to $6.6 million for the first quarter of 2018.  Total first quarter revenues included $20.3 million in net product revenues from Andexxa sales, or 45% more than the previous quarter.  In the Company's earnings release, Garland represented that "our first quarter results continue to reflect strong demand for Andexxa, as well as focused execution on our commercial launch."

31.     Later that day, the Company conducted an earnings call where Koenig represented that the "daily demand [for Andexxa] continues to grow" as "hospitals will continue to come online at a rate that is approximately consistent with what we have seen in the last few quarters."  Garland added that the Company was "very happy with what we've been seeing so far with the reorder rate" from hospitals, as those "reorder rates are really reflecting true pull through and underlying demand."  Furthermore, Garland represented that there was "enthusiasm and the desire from what we might call a nontarget hospital to stock this drug," which therefore "speaks both to the significant value of the drug as well as the desire to use the product as quickly as possible."

Accordingly, Garland underscored that he was "actually very, very pleased with the uptake of Andexxa so far" and "expected that the current trajectory should continue at a linear rate" with respect to revenues, as the "utilization on a per hospital level [] deepen[s] both as physicians get used to the product and as hospitals continue to go through their protocol development." Koenig further represented that "the amount of inventory with our distributors remain relatively constant throughout the quarter and is in line with industry norms." Koenig further represented that the Company is "seeing that the utilization of Andexxa is both ICH bleeds and also in other bleeds outside of ICH. So we're seeing a mix of all types of bleeds that are currently being treated." Similarly, Garland represented that he was "pleasantly surprised by the fact that the drug is being used broadly."

32.     Also on May 8, 2019, the Company filed a quarterly report on Form 10-Q for the quarter ended March 31, 2019 ("10-Q Q12019"), affirming the previously reported financial results. The 10-Q Q12019 was signed by Garland and Dier and contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Garland and Dier.

33.     The Company represented in this 10-Q:

As of March 31, 2019, we maintain a reserve of $6.6 million for excess and obsolescence inventories. We recorded a related charge to cost of sales of $3.9 million during the three months ended March 31, 2019. In developing the estimate for inventory reserve, we used estimates of demand. If it is determined that inventory utilization will further diminish based on estimates of demand, additional inventory write-downs may be required.

34.     In the 10-Q, the Company represented that Portola's operations "may be affected by a variety of factors, including the level of demand and market acceptance," and that the Company's success depended on the "degree of market acceptance" and "the willingness of physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

35.     On June 6, 2019, Garland participated in the William Blair Growth Stock Conference where he represented that "the reorder rate" for Andexxa, the rate for "hospitals that actually order a second or third or fourth time, is now moved up to 55%, we went from 50% in Q4 to 55% in Q1 2019."

36.     On June 11, 2019, Garland participated in the Goldman Sachs Global Healthcare Conference.  Garland represented that the Company "track[s] the number of accounts that have ordered at least once," stressed that on a quarter-on-quarter basis, Portola had "about 100 new hospitals ordering each quarter," and touted that there was "enough data to feel very confident in both the short and the long-term trajectory of Andexxa."

37.     On August 7, 2019, Portola issued a press release announcing its financial results for the second quarter ended June 30, 2019.  The Company reported that Andexxa net product revenues grew to $27.1 million of the Company's total revenue in the quarter of $28.4 million, compared to only $4 million during the same period for the prior year.  In the Company's earnings release, Garland touted "this is our fifth consecutive quarter of strong revenue growth reflecting our exceptional launch execution and continued demand for Andexxa."

38.     During the earnings call later in the day, Koenig represented that in order to continue to optimize its targeting efforts, the Company was "deepening utilization within existing accounts" and that it was "seeing encouraging trends."  Koenig further represented that there was "continued strength in demand for Andexxa" as "74% of our sales in the quarter came from reorders, reflecting real pull-through and increasing use in patients."  Garland represented that Andexxa was "one of the top five hospital drug launches over the last 30 years.  We are clearly off to a fantastic start."  In fact, Garland affirmatively represented that Portola tracked the usage of Andexxa by hospital, as they "are definitely seeing usage in patients outside of the intracranial hemorrhage space."  Garland also represented, "[t]here's nothing that we're seeing today that

makes us concerned about a lack of pull-through or a plateauing of our utilization," and that he was, "really happy with what we're seeing, both in terms of new account adds as well as deepening of the utilization."

39.     Also on August 7, 2019, the Company filed a quarterly report on Form 10-Q for the quarter ended June 30, 2019 ("10-Q Q22019"), affirming the previously reported financial results.  The 10-Q Q22019 was signed by Garland and Dier and contained signed certifications pursuant to SOX by Garland and Dier.

40.     The Company represented in this 10-Q:

> We recorded an excess and obsolescence inventory charge to cost of sales of $ 3.8 million during the six months ended June 30, 2019.  In developing the estimate for inventory reserve, we used estimates of demand compared to shelf life.  If it is determined that inventory utilization will further diminish based on estimates of demand, additional inventory write-downs may be required.

41.     The 10-Q represented that Portola's operations "may be affected by a variety of factors, including the level of demand and market acceptance," and that the Company's success depended on the "degree of market acceptance" and "the willingness of physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

42.     On August 7, 2019, the Company filed a Registration Statement and Prospectus under a Form S-3 ("Registration Statement").  On August 12, 2019, Portola announced plans to offer its common stock in a public offering ("SPO").  The next day, Portola announced the pricing of its public offering of 8,035,715 shares of its common stock at a price to the public of $28.00 per share.  In addition, Portola granted the SPO's underwriters a thirty-day option to purchase up to an additional 1,205,357 shares from the Company at the offering price.  In total, the offering raised gross proceeds of over $250 million for the Company.

43.     As part of the SPO, the Company filed a Prospectus Supplement under a Form 424(b)(5) ("Prospectus" and with the Registration Statement, collectively the "Offering Documents"). The Offering Documents were signed by, among others, Defendants Garland and Dier. In the Offering Documents, the Company touted Andexxa as a major hospital drug by representing that "Andexxa is tracking with the most successful among 45 other acute care hospital drugs launched in the past 30 years based on average quarterly sales for the first full quarters of launch." And while the Offering Documents incorporated certain risk disclosures from the Company's SEC filings, including the Annual Report on a Form 10-K for the year ended December 31, 2018; and Quarterly Reports on Form 10-Qs for the quarters ended March 31, 2019 and June 30, 2019 which warned that Portola's operations "may be affected by a variety of factors, including the level of demand and market acceptance," and that the Company's success depended on the "degree of market acceptance" and "the willingness of physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

44.     On September 10, 2019, at the Morgan Stanley Global Healthcare Conference, Garland assured investors of Andexxa's "broad utilization" and emphasized that Portola was hearing "from our physicians … a lot of enthusiasm for the drug, high unmet medical need, very limited treatment options and a very large and growing problem that is urgent and life-threatening." To bolster his assertion of Andexxa's "broad utilization," Garland cited internal metrics on the increasing number of hospitals making their first, second, and third purchases of Andexxa; a "regular chart audit" of hospital records for patients who have been given Andexxa; and an internal benchmark analysis purportedly ranking Andexxa "in the top 5" of 45 comparable drug launches in the past 30 years. Garland further assured investors that his focus was "first and foremost" on

Andexxa, which was Portola's "first, second, third priority." Garland said that all of this "gives a really positive picture about the future projections of this drug, both in short and long term."

45.     On November 5, 2019, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2019 where it reported total global revenues of $36.8 million, compared to $14.2 million for the third quarter of 2018. Total global revenues included $35.7 million in net product revenues from sales of Andexxa/Ondexxya. In the release, Garland represented that the Company had "delivered another quarter of strong Andexxa revenue in the U.S." and "will continue to focus on exceptional launch execution, leveraging external support from health authorities and favorable society guidelines, and building the clinical evidence and awareness of Andexxa" as the "use of Factor Xa inhibitors in both markets continues to grow, driving the underlying market opportunity for Andexxa/Ondexxya and long-term value of Portola."

46.     Later that day, the Company conducted an earnings call where Garland represented that Portola, "remain[s] confident in our ability to build long-term growth and value" and that "the demand for Andexxa was strong" because of continued execution on Andexxa's launch, the rapid growth of the Factor Xa inhibitor market, and Portola's success in establishing Andexxa as "the standard of care." Garland further represented, "our revenue is being driven by new customer additions and positive utilization trends" and added, "utilization per hospital per month has been staying consistent in 2019." Koenig represented, "existing accounts continued to show strong pull-through, with 76% of sales in the quarter coming from utilization or reorders compared to 74% in the previous quarter." He further stated, "inventory in the channel remained steady at approximately two weeks of demand" and described the U.S. market as "very data-rich" for use in tracking orders.

47.     Also on November 5, 2019, the Company filed a quarterly report on Form 10-Q with the SEC for the period ended September 30, 2019, affirming the previously reported financial

results.  The 10-Q Q32019 was signed by Garland and Dier and contained signed certifications pursuant to SOX by Garland and Dier.

48.    The Company represented in this 10-Q:

We recorded an excess and obsolescence inventory charge to cost of sales of $4.1 million during the nine months ended September 30, 2019. In developing the estimate for inventory reserve, we used estimates of demand compared to shelf life. If it is determined that inventory utilization will further diminish based on estimates of demand, additional inventory write-downs may be required.

49.    In the 10-Q, the Company represented that Portola's operations "may be affected by a variety of factors, including the level of demand and market acceptance," and that the Company's success depended on the "degree of market acceptance" and "the willingness of physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

50.    The above statements identified in ¶¶ 30-41; 43-49 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the six month shelf life of the short-dated Andexxa caused the Company to face a significant risk of returns from customers due to expiration before use; (2) Portola was shifting to a longer-dated Andexxa version with a shelf life of up to 36 months to exchange with short-dated versions at no cost to customers but at significant expense to the Company; (3) Portola had not established adequate reserves for returns; (4) because of utilization reviews, financially strapped hospitals and healthcare organizations were curtailing usage of Andexxa in order to make more efficient use of their budgets; (5) certain distributors were cutting back on orders of Andexxa as they were awash with inventory of Andexxa; (6) as a result, Portola was reasonably likely to need to "catch up" on accounting for return reserves; and (7) therefore, Defendants' positive statements about the

Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Truth Is Revealed

51.     On January 9, 2020, Portola was forced to admit the truth about Andexxa when it reported the Company's financial results for the fourth quarter of 2019.  The Company disclosed a remarkable **_27% sequential decline_** in Andexxa net revenues during the fourth quarter, which it attributed to two factors: a reduction in usage of Andexxa by certain hospital clients after conducting drug utilization reviews, and a $5 million adjustment in return reserves for short-dated Andexxa product.

52.     On this news, the Company's share price fell $9.98 to close at $14.76 per share on January 10, 2020, an approximately 40% decline.

53.     On January 14, 2020, Garland participated in an industry conference where he revealed that, in addition to the two factors disclosed in the Company's fourth quarter 2019 earnings release, Andexxa's net revenues were also impacted by "lower distributor purchases to manage inventory" in order "to keep their inventory levels at a constant level in the fourth quarter." In doing so, Portola essentially admitted that its distributors were so overstocked with Andexxa product that they had stopped ordering new inventory or reduced their orders.  Garland also explained that a typical utilization review occurs "every six to twelve months."

### UNDISCLOSED ADVERSE FACTS

54.     The market for Portola's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Portola's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Portola's

common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Portola, and have been damaged thereby.

55.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Portola's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Portola's business, operations, and prospects as alleged herein.

56.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Portola's financial well-being and prospects.

57.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**LOSS CAUSATION**

58.     During the Class Period, as detailed herein, the Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Portola common stock and operated as a fraud or deceit on Class Period purchasers of Portola common stock by failing to disclose to investors that the Company's financial results were materially misleading and

misrepresented material information.  When the Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Portola common stock fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of Portola common stock during the Class Period, Plaintiff and the other Class members suffered economic loss.

59.     By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status.  Therefore, the Defendants presented a misleading picture of Portola's business practices and procedures.  Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, the Defendants caused Portola to conceal the truth.

60.     The Defendants' false and misleading statements had the intended effect and caused Portola's common stock to trade at artificially inflated levels throughout the Class Period.  The stock price drop discussed herein caused real economic loss to investors who purchased the Company's common stock during the Class Period.

61.     The decline in the price of Portola's common stock after the truth came to light was a direct result of the nature and extent of the Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of Portola's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of the Defendants' fraudulent scheme to artificially inflate the prices of Portola's common stock and the subsequent decline in the value of Portola's common stock when the Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**SCIENTER ALLEGATIONS**

62.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

63.     As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Portola, their control over, and/or receipt and/or modification of Portola's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Portola, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD-ON-THE-MARKET DOCTRINE**

64.     At all relevant times, the market for Portola's common stock was an efficient market for the following reasons, among others:

a.      Portola shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.      As a regulated issuer, Portola filed periodic public reports with the SEC and/or the NASDAQ;

c.      Portola regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d.      Portola was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

65.     As a result of the foregoing, the market for Portola's common stock promptly digested current information regarding Portola from all publicly available sources and reflected such information in Portola's share price.  Under these circumstances, all purchasers of Portola's common stock during the Class Period suffered similar injury through their purchase of Portola's common stock at artificially inflated prices and a presumption of reliance applies.

66.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

67.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be

characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

68.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Portola who knew that the statement was false when made.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all Defendants.

70.     During the Class Period, Portola and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Portola common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Portola common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

71.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Portola common stock in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Portola, as alleged herein.

72.     Portola and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Portola as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Portola's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about Portola and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Portola's common stock during the Class Period.

73.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting

of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

74.   These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Portola's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

75.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Portola common stock was artificially inflated during the Class Period.  In ignorance of the fact that the market price of Portola shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded

by the Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Portola common stock during the Class Period at artificially inflated high prices and were damaged thereby.

76.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Portola, which were not disclosed by the Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Portola common stock during the Class Period, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

77.     By virtue of the foregoing, Portola and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.     The Individual Defendants were and acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the

power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

82.     As set forth above, Portola and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

February 7, 2020                              **SAXENA WHITE P.A.**


                                             /s/ David R. Kaplan_____

                                             David R. Kaplan (SBN 230144)
                                             dkaplan@saxenawhite.com
                                             Brandon Marsh (SBN 268316)
                                             bmarsh@saxenawhite.com
                                             12750 High Bluff Drive, Suite 475
                                             San Diego, CA 92130
                                             Telephone:     (858) 997-0860
                                             Facsimile:     (858) 369-0096



                                             **THE SCHALL LAW FIRM**
                                             Brian Schall (SBN 290685)
                                             brian@schallfirm.com
                                             1800 Century Park East, Suite 404
                                             Los Angeles, CA 90067
                                             Telephone:     (424) 303-1964

                                             ***Attorneys for Plaintiff***

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, John R. McCutcheon, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Portola Pharmaceuticals, Inc. ("Portola" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Portola securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Portola securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Portola securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _____2/7/2020_____
                    **(Date)**

DocuSigned by:

*John R. McCutcheon*
640DC35710DE42D...
**(Signature)**

John R. McCutcheon
**(Type or Print Name)**

## **SCHEDULE A**

| Date | Transaction | Shares | Price |
|------|-------------|--------|-------|
| 05/08/19 | Purchase | 100 | $31.24 |